UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAMON J. BALDONE, LLC | * | CIVIL ACTION |
| VERSUS | * | NO. 22-1903 |
| STARR SURPLUS LINES INSURANCE COMPANY, ET AL. | * | SECTION "O" (2) |

## ORDER AND REASONS

Pending before me for determination are two motions: (1) Restated Motion to Substitute or, in the alternative, to Intervene (ECF No. 225) and (2) Motion to Sever (ECF No. 197), both filed by Dwayne Murray, Chapter 11 Trustee of the Chateau Creole Apartments, LLC. ECF Nos. 234, 235. Defendants[1] timely filed Opposition Memoranda, and Trustee Murray timely filed Reply Memoranda. ECF Nos. 212, 218, 232, 233. The Court heard oral argument on Wednesday, January 14, 2026, and conducted a 4-hour evidentiary hearing on February 2, 2026, after which the Court took the matter under submission. ECF Nos. 236, 249.

Having considered the record, the submissions and arguments of counsel, the evidence and the applicable law, Trustee Murray's Motion to Substitute is GRANTED and alternative Motion to Intervene is DENIED AS MOOT. Although the Court is inclined to agree with the Trustee that severance would be proper if pretrial proceedings are consolidated to avoid potential inconsistent rulings on legal issues and duplicative discovery, given the uncertainty surrounding some of the facts relating to the division of the prior unallocated payments and whether the insurers or the insured allocated same, the Motion to Sever will be DENIED WITHOUT PREJUDICE to the

---

[1] Defendants are Starr Surplus Lines Insurance Company ("Starr"), Hilltop Specialty Insurance Company, Rokstone Underwriting for and on behalf of Mitsui Sumitomo Insurance Co. (Europe) Ltd (named as Underwriters at Lloyd's, London – Mitsui Sumitomo Insurance Company (Europe) Ltd.), Munich Reinsurance America, Inc., Princeton Excess and Surplus Lines Insurance Company, Arch Specialty Insurance Company, Ategrity Specialty Insurance Company, Constitution Insurance Company, LLC, and Lexington Insurance Company.

Trustee's ability to re-file this motion after expiration of the discovery and pretrial motion deadlines, all for the reasons stated herein.

## I.     **BACKGROUND**

This case arises out of Hurricane Ida damage to 21 properties. The 21 properties were insured under a commercial property insurance program, which was comprised of a primary policy and multiple layers of excess coverage, issued to the named insured JKL Group, LLC.[2] The insurers paid named insured JKL, net of deductible, $8,613,654.56 including ACV for physical damage and business interruption, in accordance with JKL's September 29, 2021 letter of instruction.[3] The largest of the 21 properties is a 208-unit apartment complex known as Chateau Creole located on Monarch Drive in Houma, Louisiana.

Dissatisfied with Defendants' claims-handling and payment, on June 23, 2022, Plaintiff Damon J. Baldone, LLC ("DJB") filed suit for contractual and extra-contractual damages alleging that it owned the 21 properties, including Chateau Creole apartments.[4] Two months after that filing, Fannie Mae intervened alleging that it held a mortgage on the Chateau Creole apartments to secure a $6.7 million note.[5] Plaintiff filed several amended complaints, each of which reiterated its allegations of property ownership.[6] Contrary to the allegations, Plaintiff did not own the 208-unit Chateau Creole apartments. Rather, an entity named Chateau Creole Apartments, LLC owned that property.

On March 29, 2024, Chateau Creole Apartments, LLC filed for relief under Chapter 11 of the Bankruptcy Code, USBC EDLA Case No. 24-10608. On August 6, 2024, Debtor filed an

---

[2] ECF No. 212 at 4-5; *see also* ECF Nos. 237, 238, 239, 240.
[3] ECF No. 212 at 5.
[4] ECF No. 1.
[5] ECF Nos. 11, 11-1, 20, 21.
[6] ECF No. 28 ¶¶ 1, 10, 12-13, 32 (filed September 21, 2022); No. 41 ¶¶ 1, 19, 22, 41 (filed April 20, 2023); No. 90 ¶¶ 1, 16, 18, 19, 38 (filed August 29, 2023).

Application to Employ Long & Long as counsel to prosecute this case.[7]  Fannie Mae opposed that application and filed a Motion to Appoint a Trustee.[8]  Chief Magistrate Judge North stayed this proceeding on November 25, 2024, to allow the bankruptcy court to address numerous matters because Chateau Creole was the largest property at issue in this case.[9]

After the Debtor filed for bankruptcy relief but before any ruling on the application to appoint counsel, DJB sought to file a Fourth Amended Complaint adding Chateau Creole Apartments, LLC as a plaintiff in this case.[10]  Defendants' response indicated they did not oppose the request for leave but argued the true purpose of the amendment was to clarify ownership of the property.[11]  Finding the Fourth Amended Complaint to be virtually identical to the Third Amended Complaint (apart from adding three new plaintiffs by name), Magistrate Judge Roby granted leave, and the Fourth Amended Complaint became operative on November 20, 2024.[12]

On January 13, 2025, based on the record and Debtor's consent to the appointment of a trustee, Bankruptcy Judge Grabill granted Fannie Mae's Motion to Appoint a Trustee.[13]  On February 24, 2025, Chateau Creole withdrew the application to employ Long & Long,[14] and on February 26, 2025, the Trustee filed an Application to Employ Fishman Haygood as Special Counsel to serve as counsel in this case, which Judge Grabill granted on March 20, 2025.[15]

---

[7] USBC EDLA No. 24-10608, ECF No. 111; *see also* ECF Nos. 162, 184 (amended and supplemental applications).
[8] *Id.*, ECF No. 114, 134, 152.
[9] ECF No. 186.
[10] ECF No. 167.
[11] ECF No. 174.
[12] ECF Nos. 181, 182.  Defendants devote a substantial portion of their Opposition to Trustee Murray's Motion to Sever arguing that Plaintiff's counsel had no authority to file the Fourth Amended Complaint.  ECF No. 212 at 7-8, 10-13.  Whether the Fourth Amended Complaint was properly filed, however, is not appropriately addressed in the context of these procedural motions, particularly given that Defendants have raised the precise issue before Judge Long in their pending motion to dismiss.  *See* ECF Nos. 211, 211-1.
[13] USBC EDLA No. 24-10608, ECF No. 239.
[14] *Id.*, ECF Nos. 270, 271.
[15] *Id.*, ECF Nos. 276, 285.

On April 7, 2025, Trustee Murray filed a Motion to Re-Open this case, which the Court granted.[16]  In addition, Trustee Murray filed a Notice of Adoption of the Fourth Amended Complaint.[17]  At that time, he did not, however, seek to substitute himself as a plaintiff.

A.  **The Motion to Substitute/Intervene**

Trustee Murray now moves to substitute himself, as Trustee of the Chateau Creole Apartments, LLC, as plaintiff in place of DJB with respect to all claims asserted on behalf of Chateau Creole apartments or, alternatively, to intervene so that he may prosecute all claims that have been or could have been asserted by Chateau Creole.[18]  Trustee Murray asserts that he alone has standing to prosecute any claims of Debtor Chateau Creole Apartments, LLC, that he has been actively involved in this case since April 2025, and that Defendants have appeared in the bankruptcy case.[19]  He also asserts that he is the proper party plaintiff under Rule 25 as Chateau Creole's interests were transferred to him by operation of law within the meaning of Rule 25(c), or alternatively, he is entitled to intervene as of right or permissively.[20]  Trustee Murray contends that he is already a proper party based on his appearance and filing of the Motion to Re-Open, participation in the Hurricane Ida CMO mediation, and other matters, but files this motion in an abundance of caution.[21]

Defendants oppose the motion, arguing that Trustee Murray cannot retroactively correct DJB's improper filing of this suit seeking damages for a separate legal entity (Chateau Creole Apartments, LLC) as DJB did not have an insurable interest in Chateau Creole's property and thus lacked standing to pursue the claim asserted herein.[22]  They further argue that Trustee Murray

---

[16] ECF Nos. 188, 189.
[17] ECF No. 210.
[18] ECF No. 225.
[19] *Id.* ¶¶ 10, 20, 22, 26;  *see* ECF No. 225-1 at 3-4.
[20] ECF No. 225 ¶¶ 27-30; ECF No. 225-1 at 3-7.
[21] ECF No. 225-1 at 2-4.
[22] ECF No. 232 at 1-2, 6-9.

4

cannot establish that substitution is proper under Rule 17(a) because DJB's decision to file on behalf of Chateau Creole Apartments, LLC was not an honest mistake but rather an intentional strategic decision in light of a prior Chateau Creole Apartments, LLC bankruptcy that divested DJB of any interest in or control over Chateau Creole apartments, LLC, and the Trustee can only step into the shoes of Chateau Creole Apartments, LLC without obtaining any greater rights.[23] Defendants also argue that Trustee Murray's motion is untimely and should have been filed before his first appearance in April 2025, and that Trustee Murray is precluded from substituting or intervening based on DJB's "unclean hands."[24]  Finally, Defendants argue that Chateau Creole Apartments, LLC's claim under the policy is prescribed.[25]

In Reply, Trustee Murray argues that he is the real party in interest to prosecute the Chateau Creole Apartment, LLC's claims, he has an interest in this case that may be impaired and is not adequately protected by existing parties, Defendants' "unclean hands" assertion is illogical because trustees are appointed due to concerns regarding a debtor's management, and the Court should address Defendants' procedural and substantive defenses on the merits at the appropriate time rather than in the context of this substitution/intervention motion.[26]  Trustee Murray disputes Defendants' assertions that he simply stands in the shoes of DJB and relies on the Bankruptcy Code to define his rights and powers, and Defendants' speculation that DJB filed suit in the wrong name to evade creditors is speculative and contradicted by Fannie Mae's intervention in this case within weeks of its filing.[27]  Trustee Murray also argues Defendants cannot establish that he is not the real party in interest because they are bound by their prior assertion that he has full authority

---

[23] *Id.* at 2-4, 10-12.
[24] *Id.* at 4, 13-18.
[25] *Id.* at 5.
[26] ECF No. 233 at 1-2.
[27] *Id.* at 3-5.

over Chateau Creole property claims asserted in this lawsuit based on judicial estoppel.[28]   He
reiterates his arguments that substitution is proper and argues that the motion is timely.[29]

  **B**. <u>**Motion to Sever**</u>

   Trustee Murray also filed a Motion to Sever Chateau Creole's property damage claim from
DJB's damage claims relating to 20 other properties.[30]   He contends that severance is necessary to
ensure that Chateau Creole's claims are prosecuted consistent with his own business judgment and
not impacted by DJB's differing views relating to the other properties.[31]   He contends that,
although all claims arise from  Hurricane Ida, the properties were in different conditions, sustained
different damages, and must each be individually evaluated and estimated; thus, while there may
be some common questions of law, the fact questions are different as evidenced by the CMO
mediations being held for Chateau Creole separate from the other properties.[32]   He argues that
severance promotes settlement and judicial economy because it allows them to focus on resolving
Chateau Creole's issues without regard to the other 20 properties, and severance ensures that the
bankruptcy estate is not prejudiced by the disposition of any of the other claims, which he contends
is a risk if the cases remain together because DJB manages the equity owner of Chateau Creole
and thus presents an inherent conflict of interest with the Trustee's interests in recovering for the
creditors.[33]   Finally, while the Trustee recognizes that there may be some of the same witnesses,
he has retained experts different from those retained by DJB for the other 20 properties.[34]

---

[28] *Id.* at 5-6.
[29] *Id.* at 7-9.
[30] ECF No. 197.
[31] ECF No. 197-1 at 2.
[32] *Id.* at 4.
[33] *Id.* at 5.
[34] *Id.*

Although the other Plaintiffs consent to Trustee Murray's severance motion,[35] Defendants oppose the motion.[36]  Defendants first argue that Trustee Murray has no status to file this motion because he is not a party and the Fourth Amended Complaint was improperly filed.[37]  On the merits, Defendants argue that the case arises from the same events and is governed by the same policy of insurance with the same adjustment team.[38]  In addition, Defendants argue that their initial unallocated $5 million payment and subsequent $3 million payment were unallocated payments to all 21 properties and thus will necessarily require overlapping proof as to the other properties.[39]  Defendants argue severance does not promote judicial economy but rather would require duplicative cases over the same policy language, event, and adjustment record, with the same witnesses and proof; therefore, keeping the cases together causes no prejudice to Trustee Murray but does prejudice them by forcing duplicative discovery, motion practice and trials, creating a risk of inconsistent verdicts.[40]  Defendants also argue that Trustee Murray cannot distance itself from DJB's misconduct in handling the case as to all properties, which is relevant to bad faith claim and would require re-litigating the same matters in separate cases if the Chateau Creole matter were severed.[41]

In Reply, Trustee Murray argues that Defendants' opposition ignores the central reason justifying severance, i.e., the inherent and irreconcilable conflict between DJB and the Trustee pertaining to any potential recovery.[42]  Because Chateau Creole's debts total $14 million and DJB would only be entitled to recover after satisfaction of those debts, DJB's interest is only to

---

[35] *Id.*
[36] ECF No. 212.
[37] *Id.* at 2-3
[38] *Id.* at 3, 14-15.
[39] *Id.* at 3, 15; *see* ECF No. 246 at 2-3.
[40] *Id.* at 16-18.
[41] *Id.* at 3.
[42] ECF No. 218 at 1.

maximize the value to recover more than $14 million rather than Trustee Murray's, which is simply to maximize recovery for the benefit of all creditors.[43]   Trustee Murray also argues that Defendants' tardy efforts to attack the Fourth Amended Complaint is improper, and his formal motion to substitute resolves any procedural objections.[44]   Finally, Trustee Murray argues that the fact that the properties are all under the same policy does not override the individualized damages, different experts, and other witnesses that distinguishes the his claim from the other 20 properties.[45]   He then reiterates his arguments regarding his authority over the bankruptcy estate and the relevant factors to consider for severance.[46]

## II.    APPLICABLE LAW AND ANALYSIS

These motions raise several distinct questions:  (1) whether Trustee Murray is the real party in interest to assert the property damage claim on behalf of Chateau Creole Apartments, LLC; (2) whether Trustee Murray may substitute himself as a plaintiff; (3) whether Trustee Murray is entitled to intervene, either as of right or permissively, if he is not entitled to substitution; and (4) whether severance of Chateau Creole's property damage claim from the other 20 properties is appropriate.

### A.   The Trustee's Substitution

The Federal Rules of Civil Procedure require that, with certain exceptions, an action must "be prosecuted in the name of the real party in interest."  FED. R. CIV. P. 17(a)(1).  The purpose of this rule is to ensure that a judgment will be final and res judicata, which protects a defendant from having to twice defend an action, once against the ultimate beneficiary of a right and then against

---

[43] Id.
[44] Id. at 2
[45] Id. at 2-3.
[46] Id. at 3-7.

the actual holder of the substantive right.[47]  The "real party in interest" inquiry of Rule 17 is distinct from Article III standing.[48]

"The real party in interest is the [one] holding the substantive right sought to be enforced, and not necessarily the [one] who will ultimately benefit from the recovery."[49]  Although the designation of the real party-in-interest is a procedural determination, a federal court sitting in diversity looks to state substantive law to determine who is the person holding the substantive right sought to be enforced.[50]  "[A] party not possessing a right under substantive law is not the real party in interest with respect to that right and may not assert it."[51]  Thus, a plaintiff generally cannot bring a claim based upon a contract to which it is not a party.[52]  If, however, the real party in interest has assigned the right, the assignee may bring suit in its own name.[53]

The filing of a Chapter 11 bankruptcy petition "creates an estate comprised of all the debtor's property, including 'all legal or equitable interests of the debtor in property as of the commencement of the case.'"[54]  This includes causes of action belonging to the debtor.[55]  During the Chapter 11 case, the enforcement of actions that constitute property of the estate generally falls

---

[47] *Wieburg v. GTE Sw., Inc.*, 272 F.3d 302, 306 (5th Cir. 2001).

[48] *Norris v. Causey*, No. 14-1598, 2016 WL 3970985, at *10 (E.D. La. July 25, 2016) (noting that parties often confuse jurisdictional standing under Article III with the principle of real party in interest (citing *Dunn v. Advanced Med. Specialties, Inc.*, 556 F. App'x 785, 789-90 (11th Cir. 2014))), *aff'd in part, remanded in part*, 869 F.3d 360 (5th Cir. 2017) (distinguishing a challenge to whether a party is a real party in interest from whether a plaintiff lacks Article III standing by noting the former "presents a merits question" and "does not go to a court's subject matter jurisdiction").

[49] *Wieburg*, 272 F.3d at 306 (alterations in original) (quoting *Farrell Constr. Co. v. Jefferson Par.*, 896 F.2d 136, 140 (5th Cir. 1990)). .

[50] *See Farrell Const. Co.*, 896 F.2d at 140; *see also Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) (holding that federal courts apply state substantive law and federal procedural law in a diversity case).

[51] *Farrell Const. Co.*, 896 F.2d at 140.

[52] *See id.* at 140 (finding plaintiff was not real party in interest when it was neither a contracting party nor a third-party beneficiary).

[53] *See, e.g.*, LA. CODE CIV. PROC. art. 698; *see also id.* Official Revision Comment (d) (noting that, "if there has been an assignment of the entire right and the suit is brought in the name of the assignor, the latter has no right of action, and the court cannot adjudicate in the absence of the indispensable party plaintiff, the assignee.").

[54] *In re SI Restructuring Inc.*, 714 F.3d 860, 864 (5th Cir. 2013) (citing *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009) (quoting 11 U.S.C. § 541(a)(1))).

[55] *Id.* (citing *Torch*, 561 F.3d at 386 ("We interpret 'all legal or equitable interests' broadly: The estate includes causes of action belonging to the debtor.")).

to the debtor-in-possession, which has "most of the powers of a bankruptcy trustee to pursue claims on behalf of the estate."[56]  Indeed, the Chapter 11 debtor-in-possession generally maintains authority over the bankruptcy estate.[57]  When, however, a trustee is appointed, the trustee becomes the real party in interest with exclusive standing to assert any claim.[58]

The filing of a Chapter 11 bankruptcy case does not by itself effect the substitution of a trustee for the bankrupt entity.[59]  Rather, when a trustee is appointed and the interest in the bankruptcy estate is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted or joined with the original party.  FED. R. CIV. P. 25(c).  The language of Rule 25(c) is permissive—while the Court may order the substitution of a transferee, it is not required to do so in order for the action to continue.[60]  Regardless, Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands.[61]

Defendants recognize that Chateau Creole Apartments, LLC owns the property that was damaged from Hurricane Ida and is listed in their insurance policies, and that Chateau Creole Apartments, LLC filed for bankruptcy.  Although Chateau Creole Apartments, LLC filed for bankruptcy on March 29, 2024, it operated as a debtor-in-possession until Trustee Murray was appointed on January 13, 2025.  In the interim, Chateau Creole Apartments, LLC was joined as a

---

[56] *Id.* (quoting *Dynasty Oil & Gas, LLC v. Citizens Bank* (*In re: United Operating, LLC* ), 540 F.3d 351, 355 (5th Cir. 2008)).

[57] *See* 11 U.S.C. §§ 1107, 1184.

[58] *Norris*, 869 F.3d at 366 (citing *Wieburg*, 272 F.3d at 306); *Wibracht v. Travelers Cas. & Sur. Co. of Am.*, 731 F. Supp. 3d 761, 781 (E.D. Tex. 2024); *see also* 11 U.S.C. § 541(a).

[59] *United States v. Transocean Air Lines, Inc.*, 356 F.2d 702, 704 (5th Cir. 1966)

[60] *F.D.I.C. v. SLE, Inc.*, 722 F.3d 264, 267 (5th Cir. 2013) ("Addressing [the issue of whether a party's failure to substitute as a transferee under Rule 25(c) and (a)(3) eliminated that party's constitutional standing] requires us to determine whether Rules 25(c) and (a)(3) impose a substitution requirement. . . . [W]e conclude that they do not."); *see also* 7C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE: CIVIL § 1958 (3d ed. 2025) ("The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on the successor in interest even though the successor is not named.").

[61] *In re Covington Grain Co., Inc.*, 638 F.2d 1362, 1364 (5th Cir. Unit B 1981)

named plaintiff in this case via the Fourth Amended Complaint.  After being joined as a named

Plaintiff, Bankruptcy Judge Grabill appointed Murray as Trustee.  Upon that appointment, Chateau

Creole Apartments, LLC's interest in this claim transferred to Trustee Murray.  Thus, there can be

no dispute that Trustee Murray is currently the real party in interest with regard to Chateau Creole

Apartments, LLC's claim for Hurricane Ida damages.

Because Chateau Creole Apartments, LLC is already a party in this case, there is no need

to "substitute" either that entity or Trustee Murray for DJB.  When the party who is alleged to be

the real party in interest is joined via an amended complaint, that moots the Rule 17 "real party in

interest" substitution issue as to the other, original plaintiff.[62]  Trustee Murray's motion in this

case thus does not implicate Rule 17's "real party in interest" issue because Chateau Creole

Apartments, LLC is already a plaintiff, leaving only the Rule 25(c) transfer of interest issue

implicated by this motion.[63]  And while Defendants argue that the Fourth Amended Complaint is

improper because it was filed without authorization from the bankruptcy court,[64] Defendants did

not raise that argument in their opposition to the motion for leave.  Indeed, in their response, they

indicated they did not oppose the amendment.[65]  Judge Roby granted the motion and directed that

the Fourth Amended Complaint be docketed.[66]  The Fourth Amended Complaint is currently the

operative complaint in this case.[67]

---

[62] *See, e.g.*, *Asset Funding Group, LLC v. Adams & Reese, LLP*, No. 07-2965, 2009 WL 799752, *3 (E.D. La. Mar. 23, 2009) (noting that the issue of whether an entity was the real party in interest rather than the original plaintiff was mooted by the amended complaint adding that entity).
[63] Even if Rule 17 were implicated by the motion, for the reasons set forth in my Order and Reasons dated February 10, 2026, ECF No. 82, in Civil Action No. 24-543, substitution under Rule 17 is also proper.
[64] Defendants assert that DJB could not pursue this action without court approval employing its counsel.  *See* ECF No. 232 at 12; 11 U.S.C. § 327.
[65] ECF No. 174 at 1.
[66] ECF No. 181.
[67] ECF No. 182.

Having established that Chateau Creole Apartments, LLC was a named plaintiff to this suit before the appointment of Trustee Murray and that its interests were transferred to Trustee Murray upon his appointment on January 13, 2025, the only issue is whether Trustee Murray is entitled to substitute in place of Chateau Creole Apartments, LLC under to Rule 25(c).  Given Trustee Murray's exclusive authority, substitution is proper.  And while Defendants argue Trustee Murray's motion is untimely, there is no time limit on substitution under Rule 25(c) because that rule is wholly permissive.[68]  Further, joinder remains practical and convenient.[69]  Accordingly, Trustee Murray's motion to substitute is timely and appropriate.

### B. Intervention

To be entitled to intervene as of right, movant must demonstrate that (1) he timely applied for intervention; (2) he has an interest relating to the property or transaction that is the subject of the case; (3) disposition of the case may practically impair or impede his ability to protect that interest; and (4) he is inadequately represented by the existing parties.[70]  Under Rule 24(b), permissive intervention is authorized upon timely motion when (1) a federal statute provides for a conditional right to intervene or (2) the intervenor has a claim or defense that shares with the main action a common question of law or fact and intervention will not unduly delay or prejudice the existing parties.[71]

Having found that Trustee Murray's substitution in place of plaintiff Chateau Creole

---

[68] *West v. Giancontieri*, No. 97-3551, 1998 WL 35296624, at *2 (E.D. La. Jan. 13, 1998) (Clement, J.) (citing WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE: CIVIL § 1958).

[69] *Vogel v. 1 Percent Lists Franchises, LLC*, No. 25-631, 2025 WL 2689209, at *2 (E.D. La. Sept. 19, 2025) (noting that a Rule 17 motion to substitute "is timely so long as joinder remains practical and convenient" (quoting *In re RLB Contracting, Inc.*, 854 F. App'x 614, 614 (5th Cir. 2021) (cleaned up))).

[70] *Adam Joseph Res. v. CNA Metals Ltd*., 919 F.3d 856, 865 (5th Cir. 2019) (citing FED. R. CIV. P. 24(a); *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994))  In assessing timeliness, the court considers: (1) the length of time during which the intervenor knew or should have known of his interest in the case; (2) the extent of prejudice to the existing parties; (3) the extent of prejudice to the would-be intervenor; and (4) unusual circumstances.  *Id.* at 865 (citation omitted).

[71] FED. R. CIV. P. 24(b)(1)(A)-(B); *see also Stallworth v. Monsanto Co*., 558 F.2d 257, 269 (5th Cir. 1977).

Apartments, LLC is appropriate under Rule 25(c), the undersigned need not analyze the alternative request to intervene.

### C. <u>Severance</u>

Trustee Murray moves to sever pursuant to Rule 21 of the Federal Rules of Civil Procedure. Because "Rule 21 does not provide any standards by which district courts can determine if parties are misjoined, courts have looked to Rule 20 for guidance."[72] But the court's authority under Rule 21 to sever any claim against a party to proceed separately is not limited to severance of only improperly joined claims under Rule 20; rather, the court has broad authority and discretion to sever any action that might cause delay or prejudice to a party.[73]

The relevant factors in determining severance are: (1) whether the claims arose out of the same transaction or occurrence, (2) whether the claims present common questions of law or fact, (3) whether settlement or judicial economy would be promoted, (4) whether prejudice would be averted by severance, and (5) whether different witnesses and documentary proof are required for separate claims.[74] The court may also consider whether jury confusion may result.[75] Severance of claims results in the creation of separate civil actions.[76]

Simply because the same hurricane caused the property damage is not sufficient, without more, to satisfy the common transaction or occurrence requirement in Rule 20(a).[77] Courts

---

[72] *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (per curiam).

[73] *Rohr v. Metro. Ins. & Cas. Co.*, No. 06-10511, 2007 WL 163037, at *2 (E.D. La. Jan. 17, 2007) (Feldman, J.) (citing *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983); *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995)).

[74] *Id.* at *2 (citing *Vaz v. Allstate Prop. & Cas. Co.*, No. 06-481, 2006 WL 2583733, at *1 (S.D. Miss. Sept. 6, 2006) (citing *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (S.D.N.Y. 1999)). In *Vaz*, the court held that a hurricane itself did not qualify as a Rule 20 common occurrence because "the storm was vastly different in its effect depending on the specific geographic location of each particular home." *Vaz*, 2006 WL 2583733, at *1. Thus, while a hurricane is a common fact, the actions do not arise from the same occurrence because the results of the storm differed by property covered and location.

[75] *Rohr*, 2007 WL 163037 at *2.

[76] *O'Neil*, 709 F.2d at 368; *see also Rowe v. Primerica Life Ins. Co.*, No. 19-863, 2020 WL 5835150, at *5 (M.D. La. Sept. 30, 2020).

[77] *Sucherman v. Metro. Prop. & Cas. Inc.*, No. 05-6456, 2007 WL 1484067, at *1 (E.D. La. May 21, 2007).

routinely sever hurricane property damage claims asserting by different insureds against the same insurer, even when the damage arises from the same cause, finding the particulars vary greatly depending on the location of the property and the condition of the property before the storm, and each claim requires particular evidence to establish the cause and extent of the loss.[78] When there are significant differences in the factual and legal issues involved in the combined claims, severance is appropriate.[79] For that reason, courts have severed claims against different insurers under different policies.[80]

When, however, the plaintiff asserts a single damage against multiple levels of insurers, severance is not appropriate.[81] For instance, in *Markey v. Louisiana Citizens Fair Plan*, Judge Vance found that the claims against plaintiffs' homeowner's insurers, Citizens and American Security, were factually intertwined with their claims against State Farm as all concern the damage to their property arising from Hurricane Katrina.[82] These cases suggest that it is not the existence

---

[78] *Rohr*, at *2-3 (discussing similar cases); *Sucherman*, 2007 WL 1484067, at *1-2 (granting severance of different property owners' Hurricane Katrina claims against the same insurer); *Ducree v. Liberty Mut. Ins. Co.*, No. 06-8286, 2007 WL 781968, at *2 (E.D. La. Mar. 12, 2007) (severing claims based on properties in three different areas of Orleans Parish that were separately insured by the same insurer and suffered varying degrees of damages); *Cresson v. State Farm Fire & Cas. Co.*, No. 06-8788, 2007 WL 1191817, at *2 (E.D. La. Apr. 19, 2007) (noting different factual and legal issues based on, among other things, each property's respective condition before the storm, location, property value, and extent of damage).

[79] *See, e.g.*, *Ellis v. Evonik Corp.*, 604 F. Supp. 3d 356, 378 (E.D. La. 2022) (granting severance of 14 plaintiff's personal injury claims seeking damages for exposure to ethylene oxide ("EtO") near defendants' petrochemical plant); *Cambre v. Union Carbide Corp.*, No. 21-1067, 2022 WL 898748, at *2 (E.D. La. Mar. 28, 2022) (same with regard to 7 plaintiffs); *see also White v. State Farm Lloyds*, No. 18-359, 2018 WL 8803380, at *2 (S.D. Tex. Dec. 27, 2018) (severing four plaintiffs' insurance claims for property damages based on different policies for different properties).

[80] *Lakewood Patio Homes Ass'n, Inc. v. Lexington Ins. Co.*, No. 22-1576, 2022 WL 22855987, at *3 (E.D. La. Nov. 15, 2022) (finding severance proper for property damage claims against different insurers); *Accardo v. Lafayette Ins. Co.*, 2007 WL 325368, *6 n.8 (E.D.La. Jan. 30, 2007) (severing 18 homeowners' claims for Hurricane Katrina and Hurricane Rita damages against various insurers eighteen because each was essentially a separate action with its own particular facts, including the amount and type of damage sustained, the specific cause of the damage (wind, rain, and/or flood), and the adjustment practices and procedures employed by each insurance company with respect to each property); *Cresson*, 2007 WL 1191817, at *2 (severing claims against Hartford from claims brought exclusively against State Farm but not severing claims for the property insured by both Hartford and State Farm).

[81] *See, e.g.*, *Markey v. La. Citizens Fair Plan*, No. 06-5473, 2008 WL 3884323, at *1-2 (E.D. La. Aug. 19, 2008) (denying severance of plaintiffs' claim for damages asserted against homeowners' insurer, excess insurer and flood insurer because claims were factually intertwined and judicial resources would be wasted litigating two cases with nearly identical factual circumstances).

[82] 2008 WL 3884323, at *2.

of the same or separate policies of insurance that informs the severance decision; rather, severance is informed by the presence of a single versus multiple properties allegedly damaged.

Although Chateau Creole's claim arises from the same storm and presents some common legal issues, the disparate factual issues, interests in promoting settlement and judicial economy, and differing witnesses and documentary proof required for each different property damage claim counsels in favor of severance. Any potential prejudice may be averted by consolidating these cases for pretrial proceedings, thus insuring that all legal issues regarding the policy are resolved consistently as to all properties and avoiding duplicative discovery.

During oral argument on February 2, 2026, Defendants appeared to concede that, if the only claims were for breach of contract for failure to pay all amounts owed for repairs, severance would be proper. Defendants assert, however, that severance is not proper given the bad faith penalty claims. Specifically, they argue that unanswered questions regarding how the insurer's unallocated $8 million in advance payments are accounted, whether the adjuster who allocated payments acted on behalf of the insurers or the insured, and whether, and in what amounts, the insureds used the proceeds to repair the property require denial of the motion. Further, they argue that, given the limited amounts of penalty awards under the bad faith statute, severance would create a rush to judgment amongst the 21 different properties, with the first to judgment potentially receiving all available bad faith penalties (or a disproportionate amount) to the exclusion of the other properties.

While the Court suspects that discovery will reveal how the more than $8 million advanced were allocated amongst the properties, which will establish the multiplier applicable to each property's bad faith claim, given the lack of discovery to date and the questions outstanding regarding same, the prudent approach is to deny severance at this time, without prejudice to re-

urge same after expiration of the discovery and pretrial motion deadlines.  This outcome would allow for consolidated discovery and resolution of disputed legal issues in the same manner as would severance with consolidation for pretrial purposes.  Further, it should have no impact on potential resolution of the particular claim involving Chateau Creole apartments as Trustee Murray acknowledged that settlement discussions for that property already proceeded separately from settlement discussions involving the other properties.  Partial resolutions of claims and partial dismissals are commonly employed in multi-party cases.

### III.  <u>CONCLUSION</u>

Accordingly, for the foregoing reasons,

IT IS ORDERED that Trustee Murray's Restated Motion to Substitute is GRANTED and alternative Motion to Intervene is DENIED AS MOOT.

IT IS FURTHER ORDERED that Trustee Murray's Motion to Sever is DENIED WITHOUT PREJUDICE to being re-urged following completion of discovery.

New Orleans, Louisiana, this ___10th___ day of February, 2026.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE